IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CENTEX HOMES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-06-2884 |
| | * | |
| CPG INVESTMENT, LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

*************

**MEMORANDUM**

In this action, Centex Homes ("Centex") has sued to recover deposit payments that it advanced towards the purchase of a large tract of land near Frederick, Maryland. Centex argues that the seller, The Grand Lodge of Maryland of the Independent Order of Odd Fellows, Inc. (the "Lodge"), failed to provide good and merchantable title to the property, entitling Centrex to return of the option payments. According to Centex, the property's lack of access to public roads creates a flaw in the title.

The Lodge has moved to dismiss or for summary judgment. The Lodge argues that Centex's predecessor in interest, CPG Investment, LLC ("CPG"), failed to raise an objection to the adequacy of access to the property within the contractual time period. Hence, the Lodge contends, Centex may not raise the issue now. The Lodge also argues that (i) CPG and Centex were advised of any access issues and, therefore, waived the right to object, and (ii) the property does, in fact, have adequate access.

The Court cannot decide these issues until the factual record has been more fully developed. Accordingly, the Lodge's motion will, by separate order, be denied without

prejudice. The Lodge may file a motion for summary judgment after the discovery period has ended.

The Court will hold a discovery/scheduling teleconference on October 10, 2007 at 4:00 p.m. Counsel should be prepared to answer the following questions at that time:

1) Apparently, the Lodge did not explicitly consent to the assignment from CPG to Centex. Does Centex have contractual rights that it can enforce against the Lodge?

2) Did CPG obtain a title report within 90 days after the contract of sale was signed?

3) If so, did the title report reference the access issue that allegedly caused Centex to refuse to close?

4) Does inadequate access to public roads render title to property unmerchantable? Does the answer depend on the type of property and its intended use? For example, the Lodge contends that Centex created the access problem by planning a dense townhouse development for the property. What effect, if any, does this have on the merchantability of title?

5) What is the relationship between Centex and CPG? Why is Centex in the dark concerning CPG's actions concerning the title report?

6) What obligations with respect to title did CPG fail to fulfill? Does Centex contend that CPG was required to spot and correct the access problem?

7) Is there an access problem? Is lack of access the sole reason why Centex did not close? Are the access problems curable?

8) Were CPG and Centex actually unaware of the access problems?

9) If the access problems render the title unmerchantable, would Centex's awareness of the situation constitute a waiver under Maryland law?

Dated this 25th day of September, 2007.

_____/s/_____
Benson Everett Legg
Chief Judge